**In re Andrew P. JACOX and Patricia Jacox, Debtors.**

**CITIZENS STATE BANK, DORCHESTER, NEBRASKA, Plaintiff,**

v.

**Andrew P. JACOX and Patricia Jacox, Defendants.**

**Bankruptcy No. BK86–2248. Adv. No. A86–0306.**

United States Bankruptcy Court, D. Nebraska.

Aug. 10, 1988.

Steven C. Turner, Omaha, Neb., for Citizens State Bank.

Vincent M. Powers, Lincoln, Neb., for debtors.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

THIS MATTER comes before the court after a trial on the issue of the dischargeability of certain indebtedness owed by debtors to creditor, Citizens State Bank, Dorchester, Nebraska, ("Bank"), in adversary proceeding A86–306. Debtors, Andrew P. and Patricia A. Jacox, husband and wife, filed a joint petition under Chapter 7 of the Bankruptcy Code. The Bank originally named Patricia Jacox as a party defendant, but shortly before trial, moved to dismiss her, which motion was sustained at the commencement of the trial.

As of March 1, 1988, Mr. Jacox was indebted to the Bank in the principal sum of $27,303.08, with a total accrued interest of $16,440.59. On or about January 12, 1984, Mr. Jacox provided the Bank with a financial statement indicating total assets of $432,850.00, and total liabilities of $183,991.00. The financial statement showed a net worth of approximately $249,000.00. On February 4, 1985, Mr. Jacox provided the Bank with a financial statement indicating assets of $193,900.00, and total liabilities of $49,900.00. Under this financial statement, Mr. Jacox had a net worth of approximately $144,000.00. On May 11, 1985, and May 31, 1985, the Bank extended or renewed credit to Mr. Jacox. In so doing, the Bank testified that it relied on the January, 1984 and February, 1985 financing statements and that at the time of the renewal of the notes, it specifically asked debtor whether or not the information set forth on the financial statements was true and accurate. The court finds that the financial statements were, at the time they were executed, materially false in that they failed to set forth the obligation of the debtor respecting certain judgment liens. The documentary evidence (Exhibit No. 13) received in evidence shows that there were thirteen judgments obtained against Andrew Jacox between February 16, 1982 and September 16, 1985. *See* Appendix A.

A review of the financial statement debtor signed on January 12, 1984, (Exhibit No. 5) reveals that the financial statement did not disclose judgments numbered one through six on Appendix A. None of those judgments were listed on the financial statement of the debtor dated February 4, 1985. (Exhibit No. 6). Mr. Bergmeyer, who testified for the Bank, stated that in extending and renewing credit, the Bank relied upon the financial statements. He further testified that if the Bank had been aware of the additional liabilities of the debtor, the loan would have been classified by the Bank, but that at the time the financial statements were signed, the Bank had no reason to believe the financial statements were inaccurate or incomplete. On the other hand, Mr. Jacox testified that although the obligations were not disclosed on the financial statements, the Bank was aware of some of these judgments.

Mr. Bergmeyer did however acknowledge that the financial statements were in fact incomplete due to the fact that several questions on the reverse side of the financial statement were not completed. The section of the financial statement which was not completed includes a variety of miscellaneous questions which solicit information about such things as taxes paid, mortgage interest paid, land under lease,

names of people who have had business relationships with the party completing the financial statement, life insurance, buildings insured, grain insured, cattle and hogs insured and so forth. Interestingly, one of the specific lines on the financial statement reads as follows: "judgments or suits pending against you at this time $_____." This provision or question was not completed on either of the two financial statements upon which the Plaintiff's complaint is founded.

Entries on these financial statements were in fact made by an employee of the Bank, Mr. Bergmeyer, during a conference with Mr. Jacox. At this conference, it was apparent that Mr. Bergmeyer asked questions to which Mr. Jacox provided information, after which Mr. Bergmeyer made entries on the financial statement form. After Mr. Bergmeyer completed the information on the financial statement, it was signed by the debtor. Above the debtor's signature, the financial statement recites:

> [i]n submitting the foregoing statement, the undersigned guarantees its accuracy with the intent that it be relied upon in extending credit to me. I warrant that I have not knowingly withheld any information that might affect my credit; I expressly agree to notify you immediately, in writing, of any material change in my financial condition whether application for further credit is made or not.

## DISCUSSION

■ The party objecting to the discharge of a debt under 11 U.S.C. § 523(a)(2)(A) must prove by clear and convincing evidence the elements of fraud:

1. The debtor made false representations;

2. The debtor knew at the time the representations were made that they were false;

3. The representations were made with intent and for the purpose of deceiving the creditor;

4. The creditor reasonably relied upon the representations; and

5. The creditor sustained the alleged injury as a proximate result of the representations.

*See In re Van Horne*, 823 F.2d 1285 (8th Cir.1987) *rehg. denied*, 823 F.2d 1285 (8th Cir.1987); *In re Jenkins*, 61 B.R. 30 (Bkrtcy.D.N.D.1986); *In re Maier*, 38 B.R. 231 (Bkrtcy.D.Minn 1984).

In this case, all of the essential elements of fraud have not been established by clear and convincing evidence.

First, the debtor did make a false representation because the financial statements failed to disclose obligations evidenced by judgments and judgment liens.

Second, the debtor knew at the time the financial statements were signed that they were false. The Bank, however, participated in the preparation of the false financial statements and the omitted information included some information known to the Bank.

Third, the court finds, as a question of fact, that the debtor did not make the misrepresentation with the intention of deceiving the Bank. The debtor knew that the Bank was then aware of certain judgment liens. The debtor understood that the Bank did not want the judgment lien information set forth on the financial statement. The debtor's intention was to provide information solicited by the banker, Mr. Bergmeyer who made entries on the financial statement forms.

Fourth, the Bank did not reasonably rely on the financial statements. The Bank had knowledge that some judgment liens existed at the time the financial statements were prepared and signed. The Bank thus knew that the financial statements contained false representations concerning judgment liens. Under these circumstances, a commercial institutional lender cannot reasonably rely upon the financial statements. This is particularly true when the omitted obligations are evidenced by judgments of public record. The Bank's knowledge of the existence of some judgment liens combined with the Bank's knowledge that the financial statements were false precludes the Bank from reasonably relying upon the financial statements without

making commercially reasonable inquiry about judgment liens. Since judgment liens and judgments are of public record and readily accessible, such an inquiry would have disclosed the information.

■ Courts take a hard look at the reasonableness of creditor's reliance upon the financial statements in making a commercial loan. Thus, when creditors fail to follow their own policy and procedures or follow them in a perfunctory manner, the debts involved are declared dischargeable on the basis that the alleged reliance is not commercially reasonable. *Jenkins, supra* at 42; *In re Hunt*, 30 B.R. 425 (D.C.M.D. Tenn.1983); *In re Klein*, 20 B.R. 119 (Bkrtcy.E.D.Pa.1982); *Bank of Waynesboro v. Yeiser*, 2 B.R. 98 (Bkrtcy.M.D.Tenn. 1979).

> [C]ourts have recognized that where the lender, through its use of forms and dealings with the debtor, leads the debtor to believe that the lender does not want the debtor to reveal all there is to know about the debtor's financial condition, the lender cannot thereafter complain when it is revealed that the debtor in fact summarized or selectively revealed financial information.

*Hunt* at 452.

In the case of *Klein*, the debts were found to be dischargeable because the bank did not reasonably rely upon the financial statements and even if it did rely, the reliance was not reasonable. "Where the Bank had available in its own files information ... which would lead a reasonable lender to investigate further into the debtor's financial condition, ... it was unreasonable for the bank not to have done so." *Klein* at 122. *See also Hunt* at 450; *Jenkins* at 42.

■ There is also a duty of inquiry further placed on the creditor where there is actual knowledge by an officer of the creditor of the debtor's financial condition based on past dealings. *Yeiser* at 102; *Hunt* at 450; *Klein* fn. 5 at 122. The court in *Yeiser* noted, but did not reach, the more demanding rule expressed in some decisions that "a creditor, at least a commercial lender may not be deemed to have justifi-

ably relied upon any representation contained in a financial statement which may be verified by reference to public records (citations omitted)." *Id.* at 102.

The recent decisions of the Eighth Circuit Court of Appeals elaborated on the "reasonable reliance element" and found that creditors had reasonably relied on financial statements without further investigation. *See Van Horne* at 1285; and *In re Coyne*, 855 F.2d 857 (8th Cir.1988). These cases are inapplicable when, as here, an institutional lender makes a commercial loan. In *Van Horne* and *Coyne* the transactions were between relatives or personal friends.

My holding as to the Bank's duty of inquiry is limited to the facts of this case. Here the Bank had knowledge that some judgment liens existed; the Bank knew that the financial statements were in error because known judgment liens were not reported; a Bank employee assisted in completing the financial statements; and commercially reasonable inquiry of the public records would have disclosed the omitted information.

## CONCLUSION

Thus, although it is not disputable that the financial statements signed by the debtor in this case are false and indeed that they are very significantly false in that they fail to set forth an excess of $100,-000.00 of liabilities, the court finds for the reasons discussed that discharge should not be denied under Section 523(a)(2)(B) of the Bankruptcy Code.

## APPENDIX A

## JUDGMENT INDEX

1. Bank of Gering v. Andrew Jacox Filed February 16, 1962
2. Philip Sheldon v. Andrew Jacox Filed October 23, 1963
3. The Commonwealth Co. v. Andrew Jacox Filed February 25, 1965
4. Marquis Hineman v. Andrew Jacox Filed November 10, 1969

5. Thomas Andreas v. Andrew Jacox Filed July 22, 1981

6. Farmers Coop of Beaver Crossing v. Andrew Jacox Filed December 16, 1981

7. Dorchester Farmers Coop Co. v. Andrew Jacox Filed March 5, 1984

8. Twin Oaks Lumber v. Andrew Jacox Filed November 14, 1984

9. National Farmers Organization v. Andrew Jacox Filed May 9, 1985

10. Arlon Whittington v. Andrew Jacox Filed June 10, 1985

11. Farmland Coop v. Andrew Jacox Filed July 8, 1985

12. Circle Leasing of Colorado v. Andrew Jacox Filed August 6, 1985 Circle Leasing of Colorado v. Patricia Jacox Filed August 6, 1985

13. Harris Jorgensen v. Patricia Jacox Filed September 16, 1985