**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

99-10338

_____


In The Matter Of:

**ELIJAH THOMAS DUNLAP, JR.,**

Debtor.

_____


**STATE BANK & TRUST, N.A.,**

Appellant,

V.

**ELIJAH THOMAS DUNLAP, JR.,**

Appellee.


_____

99-11195

_____

In The Matter Of:

**ELIJAH THOMAS DUNLAP, JR.,**

Debtor.

_____


**ELIJAH THOMAS DUNLAP, JR.,**

Appellee,

V.

**SENTRY GROUP SERVICES INC.,**

Appellant.

_____

Appeals from the United States District Court

June 29, 2000

Before GARWOOD, DeMOSS and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Creditors appeal from final orders issued by the district court dismissing their nondischargeability complaints as untimely. Because we disagree with the district court's interpretation of Fed. R. Bankr. P. 4007(c), we REVERSE and REMAND.

## I.

On October 25, 1996, an Oklahoma state court awarded two judgments against Elijah Thomas Dunlap in civil actions brought by appellants State Bank & Trust, N.A. ("State Bank") and Sentry Group Services, Inc. ("Sentry"). State Bank was awarded a $358,167.73 judgment based upon the court's finding that Dunlap had committed fraud and breached his representation of warranty and authority when he obtained a loan from State Bank. Sentry was awarded a $941,913.22 judgment for conversion, misappropriation of funds and breach of fiduciary duty.

On July 3, 1997, Dunlap filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. Pursuant to the notice originally issued by the Bankruptcy Court Clerk, and in accordance with 11. U.S.C. § 341 (1994), the first meeting of creditors (the "section 341 meeting") was scheduled for August 11, 1997. The

Clerk, in accordance with FED. R. BANKR. P. 4007(c), then calculated the deadline for the filing of nondischargeability complaints to be October 10, 1997 -- 60 days after the August 11, 1997, "date first set for the meeting of creditors held pursuant to § 341(a)." FED R. BANKR. P. 4007(c).  At the debtor's request, the 341 meeting was rescheduled for September 5, 1997, but the October 10, 1997, bar date was not altered.

Dunlap did not appear at the meeting of creditors, instead his attorney appeared and announced that Dunlap would be filing a motion to dismiss the bankruptcy.  Counsel for Sentry informed Dunlap's counsel that an objection to the dismissal would likely be forthcoming and asked that an order of dismissal not be presented to the court *ex parte*.  Nevertheless, Dunlap filed his motion, and on September 15, 1997, the bankruptcy court dismissed the case. Both appellants moved to vacate the court's order of dismissal as premature and in violation of the due process safeguards mandated by the Bankruptcy Code.  *See* 11 U.S.C. § 707(a)(1994); FED. R. BANKR. P. 1017(a).  On December 2, 1997, the bankruptcy court, concluding that it had erred in granting debtor's motion to dismiss without a hearing and an opportunity for all interested parties to be heard, reinstated the case and directed Dunlap to reset his motion for a hearing.  Due to a clerical error, the order vacating the dismissal was not entered until December 15, 1997.

Dunlap never moved to reset his motion to dismiss and the

3

motion ultimately went unresolved. Given Dunlap's failure to re-prosecute his motion to dismiss, on January 12, 1998, the Chapter 7 Trustee set a new date for the first meeting of creditors, February 6, 1998, and calculated a corresponding bar date for nondischargeability complaints as April 7, 1998. Later that same day, the debtor rescheduled the first meeting of creditors for January 30, 1998, and issued a notice titled "Notice of Continued Section 341 Meeting."

Although both dates were docketed by the Bankruptcy Court Clerk, no formal notice of the dates was issued to interested parties. Counsel to both appellants obtained the new scheduling information through consultation by telephone with the Bankruptcy Court Clerk. On at least three separate occasions in February and March the creditors were informed that the docket reflected a bar date of April 7, 1998.

On March 31, 1998, Sentry filed its complaint seeking a determination that the fraud and embezzlement rendered Sentry's judgment nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (4) (1994). On April 2, 1998, State Bank filed its complaint also seeking a determination of nondischargeability. Dunlap then moved to dismiss the adversary proceedings contending that both complaints were time-barred. A hearing was held on debtor's motion on June 23, 1998. The bankruptcy court concluded that the 60-day window for filing complaints commenced on January 30, 1998, the

4

date the section 341 meeting was actually "held," not February 6, 1998, the "first date set for the meeting."[1] The bankruptcy court determined that the 60-day filing window ended on March 31, 1997, and accordingly, the court ruled that Sentry's March 31, 1997, complaint was timely, but State Bank's April 2, 1997, complaint was not. Within its order resolving debtor's motion to dismiss the complaints, the bankruptcy court discussed its belief that debtor's attempt to dismiss his case should act to toll the running of the 60-day filing period while the bankruptcy court considers the motion. Under the bankruptcy court's tolling theory, the clock on the filing period would not commence again until the section 341

---

[1] The language of the rule was amended in 1999 (after all the relevant events of this case occurred) by eliminating the word "held" to emphasize that the 60 days runs from the first date set for the section 341 meeting not the date the meeting actually takes place. *See* FED. R. BANKR. P. 4007(c); LAWRENCE P. KING, ET AL., 9 COLLIER ON BANKRUPTCY § 4007.04[1][a] (15th ed. 1999)("The drafters presumably opted for the absolute certainty of such a fixed date rather than a date which might change one or more times depending upon the ultimate scheduling of the creditors' meeting.").

A clear majority of courts addressing the complaint filing deadline under the old Rule 4007(c) concluded that the 60-day limitations period runs from the date first set for the meeting, regardless of when the meeting is actually held. *See, e.g., Peerless Ins. Co. v. Merriell L. Miller (In re Miller)*, 228 B.R. 399, 401 (B.A.P. 6th Cir. 1999)(" The majority of cases interpret Rule 4007(c) to require that the 60-day period runs from the 'first date set for the meeting of creditors,' notwithstanding that the meeting is continued and actually occurs on a different date. We concur."); *see also Durham Ritz, Inc. v. Williamson (In re Williamson)*, 15 F.3d 1037, 1039 (11th Cir. 1994). In this case, largely because Dunlap failed to appear at the September 5, 1997, section 341 meeting, the bankruptcy court ruled that the filing window ran from January 30, 1998, the date the meeting was actually held with Dunlap in attendance.

meeting of creditors was held on January 30, 1998. Nevertheless, the suggestion of tolling as an appropriate equitable remedy in this case did not form the basis for the bankruptcy court's ruling, and therefore, was mere dicta.

State Bank appealed the bankruptcy court's ruling only to have the district court affirm the dismissal after application of a tolling rule based in part upon the bankruptcy court's dicta. But the district court did not adopt the bankruptcy court's tolling proposal wholesale, instead, it determined that "the tolling period would have ended when Dunlap noticed the January 30, 1998, meeting of creditors on January 12." The court concluded that although debtor's motion to dismiss was never resolved -- because the debtor failed to take any action to prosecute the motion after reinstatement of the case -- the motion could be deemed abandoned by January 12, 1998. Ultimately, the district court concluded that the bar date was actually March 13, 1998, 60 days after the motion to dismiss was deemed abandoned. State Bank took appeal from that ruling.

Debtor appealed the bankruptcy court's order finding Sentry's complaint timely. The district court, with a different judge presiding, adopted the reasoning from the order dismissing State Bank's complaint as untimely after calculating a bar date of March 13, 1998. Based on the newly calculated complaint filing deadline, the court ruled that Sentry's complaint was untimely. Further

6

adding to the procedural confusion, the court incorrectly stated that "the date first set for the creditors' meeting was January 12, 1998, not January 30, 1998." Sentry appealed the district court's dismissal of its complaint. On appeal to this Court, both cases were consolidated.

## II.

Since there are no contested issues of fact in this appeal, we are presented solely with questions of law. We review a bankruptcy court's legal rulings and decisions *de novo*. *See Traina v. Whitney National Bank*, 109 F.3d 244, 246 (5th Cir. 1997).

## III.

The sole issue before us is how to determine the bar date for the filing of nondischargeability complaints after a bankruptcy court has dismissed the case. There is no controlling Fifth Circuit precedent, and our sister circuits have not yet addressed the issue. Accordingly, we turn first to the relevant provision of the Bankruptcy Rules, FED. R. BANKR. P. 4007(c), which provides:

> **A complaint to determine the dischargeability of a debt** pursuant to § 523(c) of the Code **shall be filed no later than 60 days following the *first date set* for the meeting of creditors held pursuant to § 341(a).** The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of any party interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

7

FED. R. BANKR. 4007(c)(emphasis added).

Rule 4007(c) must be read in conjunction with Rule 9006(b)(3) which permits a bankruptcy court to "enlarge the time for taking action under [Rule 4007] . . . only to the extent and under the conditions stated in [that rule]." FED. R. BANKR. P. 9006(b)(3). The strict time limitation placed upon creditors who wish to object to a debt's dischargeability reflects the Bankruptcy Code's goal of providing debtors with a fresh start. *See Matter of Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991); *see also Neeley v. Murchison*, 815 F.2d 345, 346 (5th Cir. 1987)(Rule 4007(c) "evince[s] a strong intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge."). Also, "[t]his fixed, relatively short limitation period enables the debtor and creditors to make better-informed decisions early in the [] proceedings." *Neeley*, 815 F.2d at 346-47. In evaluating the various rules for interpreting Rule 4007(c) proffered by the parties and the courts below, we seek a rule that best preserves the integrity of the fixed 60-day window following the section 341 meeting of creditors, facilitates informed decision making by creditors, and allows creditors sufficient unequivocal information to calculate the bar date with certainty.

Like the bankruptcy and district courts below, we can quickly discard debtor's proffered rule for interpreting Rule 4007(c).

8

Debtor argues that the "date first set" language must refer to August 11, 1997, the original setting for the meeting of creditors, with the corresponding bar date of October 10, 1997. Under debtor's theory, the deadline passed during the three-month period in which the case was dismissed. Purportedly, the creditors could have taken steps to protect themselves by filing motions and complaints with the court despite the dismissal and the fact that the debtor had never appeared for examination by the creditors at the section 341 meeting. While debtor's rule offers the certainty of a fixed filing period of 60 days, it would precipitate a barrage of prophylactic filings in all cases dismissed before the complaint deadline, and would thus burden both creditors and the courts with unnecessary expense and effort.

Creditors argue that this case is best resolved by application of the rule set forth in the analogous case *Coston v. Bank of Malvern*, 987 F.2d 1096 (5th Cir. 1992), in which we held that the 60-day period for filing nondischargeability complaints did not run from the scheduled date of the first meeting of creditors where the proceedings were stayed due to pendency of a related action in another state.[2] In *Coston*, two creditors filed a petition in the Bankruptcy Court for the Western District of Arkansas forcing the

---

[2] Creditors argue first for the application of *Coston* to the case at bar. Alternatively, they advance numerous equitable arguments for reversal. Because we adopt the reasoning of *Coston* as the basis for our holding, we need not consider these equitable arguments.

9

Costons into involuntary bankruptcy. The following day, the Costons filed a voluntary petition in the Bankruptcy Court for the Eastern District of Texas. One of the creditors then filed a notice of stay, pursuant to FED. R. BANKR. P. 1014(b), with the Texas bankruptcy court and the case was stayed pending disposition of the Arkansas case. However, prior to the stay, the Texas bankruptcy court had already scheduled the first meeting of creditors for March 1, 1989. Due to the stay, the Texas court canceled the meeting and put all other proceedings on hold.

On May 10, 1989, the Arkansas bankruptcy court entered an order dismissing the involuntary bankruptcy case, thus reactivating the Texas voluntary case. The court then rescheduled the meeting of creditors which was held on July 10, 1989. Within 60 days of the July 10, 1989, meeting, one of the creditors filed a nondischargeability complaint. The Costons sought to have the complaint dismissed as untimely because it was not filed within 60 days of the originally scheduled March 1 meeting. The Costons, like Dunlap, argued that not only had the bar date passed during the stay, but that no new date could be set subsequent to the stay and revival of the case. We did not find this argument persuasive, and explained why rescheduling a new bar date was necessary:

Once the notice of stay was recognized by the court in Texas, that court's proceeding was on hold indefinitely until the stay was lifted and the proceeding in Arkansas dismissed. Only when that occurred and a date was set for the initial meeting of creditors did the sixty days begin to run. In the stay situation,

10

the new date set by the court is the "first date" under Rule 4007(c); it is not merely a rescheduling of the old pre-stay date.

> Facially, this ruling may appear to contradict the wording of Rule 4007(c). But, in light of Rule 1014(b), no other result is sensible or possible. The Bank cannot be penalized because it did not comply with a filing deadline of a court whose proceedings had been stayed. To suggest that even though the court's proceedings on the Costons' case had been stayed under Rule 1014(b), its filing deadline under Rule 4007(c) continued to run is ludicrous.

*Coston*, 987 F.2d at 1099.

The district court dismissed *Coston* as inapplicable to the case *sub judice* by suggesting that a "premature dismissal" of the case failed to generate the same consequences as a stay pursuant to FED. R. BANKR. P. 1014(b). The court went on to imply that because State Bank recognized the bankruptcy court's error in granting the *ex parte* dismissal, State Bank should have taken some measures to protect itself. To the contrary, we believe the case for rescheduling the section 341 meeting and recalculating the bar date is far more compelling when a bankruptcy case has been dismissed rather than merely stayed. Resetting the meeting of creditors and the complaint filing deadline preserves the integrity of the 60-day period and allows creditors sufficient unequivocal information to calculate the bar date with certainty.

With this bright-line rule in mind, the deficiencies of a tolling rule, like that applied by the district court, are evident.

11

First, there is no provision for a tolling regime found in the relevant portions of the Bankruptcy Code or Rules. Instead, a new rule had to be crafted based largely upon the equitable considerations elaborated upon by the bankruptcy court. There is similarly no provision for a tolling rule to be found in any of our earlier decisions. Debtor, who supports application of a tolling rule as an alternative argument, cites to our decisions in *Grossie v. Sam* (*In re Sam*), 894 F.2d 778 (5th Cir. 1990), and *Neeley v. Murchison*, 815 F.2d 345 (5th Cir. 1987), as supporting application of a tolling regime, when in fact they are silent on the issue.[3]

Second, a tolling rule fails to comport with the purpose of Rule 4007(c), namely to establish a "fixed, relatively short limitation period" for creditors to act after the section 341 meeting. In this case, confusion in applying a tolling rule stems from the uncertainty surrounding the date the limitation period recommenced: did the 60-day clock start anew on December 2, 1997, the day the order vacating the dismissal was signed; December 15, 1997, the day the order was entered on the docket; January 12, 1998, the day the motion to dismiss was deemed abandoned; or

---

[3] The debtor also cites these cases as supporting his contention that the bar date passed during the three-month period in which the case was dismissed. Neither case supports this contention. The sole issue in *Neeley* and *In re Sam* was whether the court clerk's failure to give a creditor the 30-day notice of dischargeability required under Rule 4007 excused the filing of complaints outside the 60-day window provided in Rule 4007(c). These cases tell us nothing about the calculation of the bar date following dismissal and reinstatement of a bankruptcy case.

12

January 30, 1998, the day the meeting of creditors was finally held?  The tolling theories advanced by the debtor, the bankruptcy court (in dicta), and the district court all result in different complaint deadlines, ranging from January 11, 1998, to March 31, 1998.  The harshest tolling theory is advanced by the debtor. According to debtor's calculations, the bar date would be tolled only until January 11, 1998, despite the fact that the 341 meeting of creditors would not take place until January 30, 1998.[4]  It is difficult to see how a rule that could allow a complaint filing deadline to precede the meeting of creditors, the benchmark for calculating the 60-day filing period, could possibly comport with the purpose of Rule 4007(c) to allow informed decision making early in the proceedings.  A tolling rule avoids the need for prophylactic filings, but only at the expense of the certainty provided by a fixed 60-day filing period.  We see no reason to believe that the amorphous nature of an equitable tolling rule would likely result in any less confusion when applied in other cases. In sum, a tolling rule finds no support in the Bankruptcy Code and holds little promise of providing an efficient and certain procedural rule of law.

Conversely, application of the *Coston* rule best preserves the

---

[4]  Debtor fails to explain how creditors, or the trustee for that matter, could be expected to make "better-informed decisions" without having first examined the debtor at the section 341 meeting as contemplated by the Bankruptcy Code.

integrity of the 60-day period following the meeting of creditors, facilitates informed decision making by creditors, and allows creditors sufficient unequivocal information to calculate the bar date with certainty. Resetting the meeting of creditors and the complaint filing deadline will also forestall the one certainty a tolling rule would provide -- namely, an inevitable fusillade of creditors' calls to the Bankruptcy Court Clerk seeking confirmation of their bar date calculations. Instead, a bright-line rule based on the new first meeting of creditors eliminates creditor guesswork, strictly adheres to the language of Rule 4007(c), and does not conflict with precedent of this Court.

In the instant case, the Bankruptcy Court Clerk rescheduled the section 341 meeting for February 6, 1998, and recalculated the bar date as April 7, 1998. Although the meeting of creditors was subsequently moved forward, February 6, 1998 remained the new "First date set" under Rule 4007(c), and consequently, the bar date was correctly docketed as April 7, 1998. Because both creditors made their filings before April 7, 1998, both were timely.

## IV.

For the reasons set forth above, we REVERSE and REMAND both district court orders dismissing as untimely creditors nondischargeability complaints with instructions to remand both cases to the bankruptcy court for further proceedings consistent with this order.

14