**INTERNATIONAL AIR RESPONSE,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–428C.

United States Court of Federal Claims.

June 1, 2001.

John P. Frank, Phoenix, AZ, for plaintiff. Dale A. Danneman and Randy Papetti, Lewis and Roca LLP, of counsel.

Kenneth S. Kessler, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant.

---

## OPINION

MILLER, Judge.

This case is before the court after briefing on defendant's motion to dismiss on the ground that plaintiff failed to timely file a complaint. In ruling on defendant's motion, the court must consider the effect of a federal district court judge's order staying enforcement of a contracting officer's decision that would have commenced the running of the applicable statute of limitations. Argument is deemed unnecessary.

## FACTS

International Air Response ("plaintiff") challenges a contracting officer's decision that plaintiff's 1989 Exchange Agreement (the "Agreement") with the United States Forest Service (the "Forest Service") was illegal. The Agreement called for T & G Aviation, Inc. (plaintiff's predecessor), to provide three specified historic aircraft to museums designated by the Forest Service. In exchange plaintiff would receive three C–130 military transport airplanes that plaintiff could modify for air tanker use.

The Agreement is but one of numerous similar exchange agreements whereby the Forest Service provided surplus military transport planes to aviation companies in exchange for historic planes. *See Aero Union Corp. v. United States*, 47 Fed.Cl. 677 (2000). These Agreements have been the subject of multiple lawsuits. An independent airplane broker and a Forest Service official responsible for most Agreements, (although not plaintiff's Agreement) faced criminal charges with respect to their involvement in the airplane exchanges. *See United States v. Fuchs*, 218 F.3d 957 (9th Cir.2000). The Department of Agriculture, which has authority over the Forest Service, began to scrutinize plaintiff's and other aviation companies' Agreements beginning in 1989, although no action was taken against plaintiff. Some of these companies, however, resorted to legal challenges against the Government's attempts to void the Agreements. *See Aero*

*Union*, 47 Fed.Cl. 677; *Pacific Harbor Capital, Inc. v. United States Dep't of Agriculture*, 845 F.Supp. 1 (D.D.C.1993).

The litigation that generated the issue before the court involved a 1994 action brought under the False Claims Act, 31 U.S.C. § 3729 (1994), against all the aviation companies, including plaintiff, involved in the Forest Service's aircraft exchange program. *See United States ex rel. Eitel v. Reagan*, 898 F.Supp. 734 (D.Or.1995). The Government originally declined to intervene in this *qui tam* action. However, after the district court dismissed the action and appellate briefing and argument were completed, the United States Court of Appeals for the Ninth Circuit allowed the Government to intervene in the case. The Government intervened against several defendants in the *Eitel* action, but not plaintiff. The circuit court then remanded the case to the Oregon federal district court, which, in turn, transferred the case to the United States District Court for the District of Arizona. The Government filed an amended complaint naming plaintiff as an *Eitel* defendant. Plaintiff (now a defendant in *Eitel* ) responded on April 29, 1998, with a motion for summary judgment against the Government's amended complaint.

On November 28, 1998, while plaintiff's motion for summary judgment was pending before the Arizona district court, the contracting officer issued a decision finding the Agreement between the Forest Service and plaintiff illegal and determining that the Government was entitled to the three C–130 aircraft. Plaintiff received the contracting officer's decision on or about December 8, 1998.[1] The Contract Disputes Act, 41 U.S.C. § 609 (1994 & Supp. V 1999) (the "CDA"), affords plaintiff 90 days to appeal the contracting officer's decision to the appropriate Board of Contract Appeals (in this case, the Department of Agriculture Board of Contract Appeals) or one year to file a claim in the United States Court of Federal Claims. [Pl. Mot at 6]. Thus, plaintiff's appeal originally was required to be filed in this court by December 8, 1999, at the latest.

---

1. Defendant's certified mail receipt reflects December 7, 1998 as the date of delivery, although plaintiff states that it received the contracting officer's decision on December 8, 1998. Pl.'s Br. filed Mar. 19, 2001, at 6.

After receiving the contracting officer's decision, plaintiff sought a stay of that decision from the Arizona district court on January 7, 1999. The Arizona district court issued an order "staying the enforcement of the action by the contracting officer and staying any deadlines pertinent to that order for appeal or review" on February 1, 1999. On October 13, 1999 (after plaintiff's motion for summary judgment was granted in the Arizona lawsuit), the Arizona district court lifted the stay. That order stated:

> The Government requests that the Court lift its order enjoining the prosecution of the Government's case in the District Court of the District of Columbia.
>
> THE COURT FINDS that the issues to be raised in the District of Columbia, pursuant to the Contract Disputes Act of 1978, are different and separate from those raised in the action before this Court. Accordingly, neither res judicata nor collateral estoppel operate [*sic*] to make the injunction issued in this case, which was entered to prevent duplicitous litigation, [*sic*] foreclose the litigation of the issues in the District of Columbia.

Plaintiff's complaint was filed in the Court of Federal Claims on July 21, 2000.

The issue presented is whether plaintiff was required to file an appeal of the contracting officer's decision with the United States Court of Federal Claims within one year of receiving the contracting officer's decision, or whether the Arizona district court's order "staying the enforcement of the action by the contracting officer and staying any deadlines pertinent to that order for appeal or review" tolled the statute of limitations.

## DISCUSSION

### 1. *Motion to dismiss standards*

When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). In *W.R. Cooper General Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988), the court stated: "In cases such as this in which a party has moved to dismiss for lack of jurisdiction, we must consider the facts alleged in the complaint to be correct. If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." (Citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; additional citations omitted.) However, the burden is on the plaintiff to establish jurisdiction. *Reynolds*, 846 F.2d at 748 (citing cases).

### 2. *Jurisdiction*

"All federal courts are courts of limited jurisdiction, and it is the duty of a federal court to examine its jurisdiction over every claim before it assumes jurisdiction over the claim." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed.Cir.1998). The United States Court of Federal Claims is a court of limited jurisdiction, and, as such, "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Because jurisdiction in this case is premised upon the CDA, an appeal of the contracting officer's decision must be filed with the Court of Federal Claims "within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed *de novo* in accordance with the rules of the appropriate court." 41 U.S.C. § 609(a)(3).

Defendant deems plaintiff's suit untimely because it was filed after the December 8, 1999 deadline, which was 12 months from the date of plaintiff's receipt of the contracting officer's decision. Plaintiff counters that because a stay was in effect from February 1, 1999, to October 13, 1999, the filing deadline was tolled during this interval. Thus, from plaintiff's perspective, the stay period functioned to extend the December 19, 1999 deadline for approximately 8½ months. On this basis plaintiff argues that its July 21,

2000 complaint (which was filed within seven months of December 8, 1999) was timely.

In order to evaluate plaintiff's assertion of jurisdiction, the court considers its arguments in two general categories. First, whether the deadline for filing was tolled "as a matter of law," [2]—that is, whether the district court had the authority and jurisdiction to stay the filing deadline—or whether the deadline was tolled by operation of statute. Second, the court considers the argument that the deadline was equitably tolled by the proceedings in the district court.

### 1) *Tolling "as a matter of law"*

■ Plaintiff contends that the district court stay tolled the requirement for filing under the CDA. Plaintiff cites *Coston v. Bank of Malvern*, 987 F.2d 1096 (5th Cir. 1992), for the general proposition that one federal court can stay proceedings in another federal court.

*Coston* involved two bankruptcy proceedings in different federal courts implicating the same debtors. The first was filed in Arkansas, the second in Texas. Under bankruptcy rules the second action was stayed by the first. However, proceedings in the second action already had begun, and the Texas court had set a preliminary deadline for the first meeting of creditors. After the first action was dismissed, the debtors moved to hold their creditors to the preliminary deadline originally set by the Texas court. On appeal the Fifth Circuit rejected this argument, ruling that all filing deadlines had been stayed by operation of the bankruptcy rules. *Coston*, 987 F.2d at 1099.

Defendant points out that the United States Court of Claims recognized that "Congress has set the twelve-months limit, and this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize." *Gregory Lumber Co. v. United States*, 229 Ct.Cl. 762, 763, 1982 WL 25950 (1982). *Coston*, along with a number of other cases cited by plaintiff, involved a unique statutory scheme that tolled filing deadlines by operation of law—

explicit tolling provisions mandated by statute.

Defendant's argument on this point is convincing. Because *Coston* involved an automatic statutory tolling, it is not analogous to the situation at bar, nor are many of the other cases cited by plaintiff. *See, e.g., Burrhus v. M & S Mach. & Supply Co.*, 897 S.W.2d 871, 873 (Tex.Ct.App.1995) (insurance code provisions); *Tibbetts v. Gagliardi*, 2 S.W.3d 659, 664–65 (Tex.Ct.App.1999) (same). Plaintiff offers no binding or persuasive authority suggesting that the CDA contains any provision that would affect the deadlines imposed by section 609(a)(3).

Plaintiff's alternative argument for tolling the filing deadline as a matter of law derives from the inherent authority of United States district courts. According to plaintiff, this authority "to enter injunctions in defense of their jurisdiction and stay related proceedings in other courts is well established." Pl.'s Br. filed Mar. 19, 2001, at 16. Plaintiff contends that this authority derives from the All Writs Act, 28 U.S.C. § 1651 (1994), and the "inherent equitable power of the courts." Pl.'s Br. filed Mar. 19, 2001, at 16. As support for the tolling of the filing deadline, plaintiff buttresses its argument with the statements of defense counsel acquiescing in the authority of the Arizona district court to enter a stay.

The All Writs Act establishes that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, nothing in the All Writs Act gave the district court power to derogate from the jurisdiction of the Court of Federal Claims, or otherwise to affect the CDA's limitations provision. As the Supreme Court has recognized,

> [w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary

---

2. The court recognizes that the concept of tolling "as a matter of law" has not been endorsed or considered by the appellate authorities and uses

defendant's descriptive phrase for analytical purposes only. *See* Def.'s Br. filed May 10, 2001, at 7.

remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate. *Pennsylvania Bureau of Correction v. United States Marshals Serv.,* 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985). Compliance with statutory procedures was exactly what was required in the instant case. Although it may have been an inconvenience, plaintiff should have secured its appeal in either the Court of Federal Claims or the Department of Agriculture Board of Contract Appeals and sought a stay in the forum elected. These fora were the only venues with power to enter such a stay, as they would have been the only ones with the requisite jurisdiction to do so. The district court undoubtedly sought to ease the administrative burden on plaintiff of filing such an appeal, but it did not possess the requisite jurisdiction. The stay order did not impact the plenary jurisdiction of the Court of Federal Claims to hear the appeal from the contracting officer's decision. *See Morton Thiokol, Inc. v. United States,* 4 Cl.Ct. 625, 628 (1984) ("If this court were bound to defer to the district court's 'findings' on point, the transfer to this court would be cosmetic.").

Plaintiff's effort to muster case law for the proposition that such jurisdiction would have been part of the "inherent equitable power of the courts" is unavailing. *Steelman v. All Continent Corp.,* 301 U.S. 278, 287–88, 57 S.Ct. 705, 81 L.Ed. 1085 (1937), is a bankruptcy decision, that, like *Coston,* is inapposite. *Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F.2d 1002, 1004 (8th Cir. 1993), also cited by plaintiff, actually undercuts plaintiff's arguments. As that case demonstrates, injunctions designed to prevent "duplicative" litigation in two different courts are effective only when both courts have "jurisdiction over ... the subject matter of the dispute." *Id.* at 1004. The Arizona district court did not have subject matter jurisdiction over the contracting officer's decision and thus could not stay the effective date of its issuance.

Finally, the statement made by counsel for the United States during argument on the injunction motion that "we don't contest that Your Honor has the discretion to grant [plaintiff's] motion," Hearing Transcript, *United States v. Reagan,* No. CIV 97–169–TUC–WDB, at 17 (D.Ariz. Jan.28, 1999) ("Hearing Tr."), was insufficient to confer jurisdiction on the district court. Federal courts, like the Arizona district court, "are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Moreover, "lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties." *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934). The concession on behalf of the United States was not sufficient to provide the district court with authority to stay the proceedings pursuant to the contracting officer's decision.

### 2) *Equitable tolling*

Although neither party has cited the Federal Circuit's *en banc* opinion in *Bailey v. West,* 160 F.3d 1360 (Fed.Cir.1998), it nonetheless guides the court's analysis with respect to plaintiff's equitable tolling arguments. *Bailey,* interpreting the Supreme Court's pronouncement in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), elucidates the basic principle that "the doctrine of equitable tolling, when available in comparable suits of private parties, is available in suits against the United States, unless Congress has expressed its intent to the contrary." *Bailey,* 160 F.3d at 1364.

The Federal Circuit continued its application of *Irwin* with two follow-up questions. First, would equitable tolling be available between private litigants in a situation comparable to plaintiff's? And, second, " '[i]s there good reason to believe that Congress did not want the equitable tolling doctrine to apply' in a suit against the United States?" *Bailey,* 160 F.3d at 1364 (quoting *United States v. Brockamp,* 519 U.S. 347, 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)). As of yet, the Federal Circuit "has not decided whether equitable tolling applies to the time

limitations in the Contract Disputes Act for challenging a contracting officer's decision." *Bonneville Assocs., Ltd. P'ship v. Barram,* 165 F.3d 1360, 1365 (Fed.Cir.1999). A negative response to the first question pretermits the need to address the second.

■ Whether equitable tolling would be available to plaintiff depends on whether "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or ... the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin,* 498 U.S. at 96, 111 S.Ct. 453. The Supreme Court recognized in *Irwin* that "[f]ederal courts have typically extended equitable relief only sparingly," *id.,* and that the doctrine did not extend to any "garden variety claim of excusable neglect." *Id.*

Plaintiff has marshaled evidence of its diligence in pursuing this case. It points to the earlier defense of its rights in both the Oregon and Arizona litigation and its immediate response to its receipt of the contracting officer's decision. Plaintiff claims that if it did miss the filing deadline, this shortcoming occurred because "a previously unannounced exception to the general rule of tolling applies to appeals under the Contracts [*sic*] Disputes Act." Pl.'s Br. filed Mar. 19, 2001, at 19.

Defendant's conduct, according to plaintiff, is also relevant to the equitable principles at stake. Plaintiff charges that defendant "deliberately began the administrative action [which resulted in the contracting officer's decision] at the same time it was also actively litigating the same facts and issues in federal district court," "knew about and did not appeal the district court's stay order," and "took no action to enforce the contracting officer's decision between the lifting of the stay and [plaintiff's] filing of this appeal." Pl.'s Br. filed Mar. 19, 2001, at 19. Once again, plaintiff points to the unfairness of absolving the Government from its position before the Arizona district court, before which defendant acknowledged the court's "discretion to grant [plaintiff's] motion [for a stay of the contracting officer's decision]." Hearing Tr. at 17.

Defendant's response to these facts emphasizes the gap in time between the lifting of the stay by the Arizona district court and the original filing deadline. Although the stay was lifted on October 13, 1999, the original filing deadline was December 8, 1999. Plaintiff's decision to wait until July 21, 2000, to file its complaint, defendant argues, hardly manifests the diligent pursuit of plaintiff's rights. Defendant maintains that no recognized legal authority permitted either the district court or the Court of Federal Claims to toll the appeal period required by section 609(a)(3) at the time the stay order was entered.

As justification for its own conduct, defendant points out that the United States announced in court that plaintiff could and should proceed under the CDA's requirements. Examination of the hearing transcript bears this assertion out. Government counsel stated that plaintiff "can choose to appeal either to the Board of Contract Appeals or the Court of Federal Claims," Hearing Tr. at 10, and, if plaintiff did so, that "it should file a Motion to Stay in whichever forum it's filed with." *Id.* at 12.

The court finds that the circumstances of the district court proceedings and defendant's conduct do not meet the narrow criteria that *Bailey* deems necessary for equitable tolling, *i.e.,* filing a defective pleading during the statutory period or being induced or tricked by an adversary's misconduct into allowing the filing deadline to pass. No allegation is present that plaintiff filed an earlier defective pleading. Moreover, defendant spelled out the exact procedure that plaintiff should have followed in order to diligently protect its rights. Plaintiff did not do so, however, even when the stay was lifted and the original filing date had not expired. Instead, plaintiff filed near the end of what it concluded was a postponed deadline.

The court is concerned when the Government whipsaws a plaintiff. *See National Steel & Shipbuilding Co. v. United States,* 8 Cl.Ct. 274, 275 (1985) (criticizing the Government for arguing in federal district court that jurisdiction was proper in United States Claims Court, but after suit filed in Claims

Court arguing that jurisdiction was absent). When the Government argues against jurisdiction in federal district court on the basis that jurisdiction is proper in the Court of Federal Claims, but, having persuaded the district court that jurisdiction lies in this court, later has a jurisdictional epiphany that the case does not belong in the Court of Federal Claims, basic notions of fair play are offended. The court has scrutinized the Government's conduct both before the Arizona district court and the Court of Federal Claims and concludes that it does not sink to the level of whipsawing. What befell plaintiff's efforts to obtain judicial redress is regrettable, although necessary to uphold those larger jurisdictional principles that demand obeisance.

Relevant precedent is sufficient to convince the court that the "garden variety neglect," *Irwin,* 498 U.S. at 96, 111 S.Ct. 453, in the instant case does not warrant equitable relief. *Bailey* (which did not explicitly endorse equitable tolling for that plaintiff, but simply remanded the issue to the Court of Veterans Appeals) emphasized that the *pro se* claimant, as a veteran, was in a particular "paternalistic" relationship with the Government and was lulled into accepting and relying on the Government's aid and advice. *Bailey,* 160 F.3d at 1365. Those circumstances are a far cry from the situation at hand, where plaintiff was ably represented by counsel, was informed by the Government of the proper procedure to secure its appeal rights, and simply failed to do so.

The court is not unsympathetic to the fact that it was the district court's order that played a role in plaintiff's late filing. Other cases have recognized that a late filing resulting from a "misunderstanding caused by the court," *Bailiss v. Secretary of the Dep't of Health and Human Servs.,* 37 Fed.Cl. 64, 68 (1996), is relevant to the application of the doctrine of equitable tolling. In *Thompson v. INS,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), for example, defendant did not object to post-trial motions that were untimely because they were filed more than ten days after the entry of judgment. The district court found that such motions were made "in ample time" and denied the motions. *Id.* at 385, 84 S.Ct. 397. Later, on appeal, however, defendant argued that the post-trial motions were untimely and that a notice of appeal filed by plaintiff was untimely because it was not filed within 60 days of the entry of judgment. Because defendant's argument depended on a ruling that the post-trial motions were untimely, and because trial court specifically found that the motions were timely and plaintiff relied on that finding, the Supreme Court equitably tolled the appeal filing deadline. Similarly, in *Carlile v. South Routt Sch. Dist., RE 3–J,* 652 F.2d 981 (10th Cir.1981), the district court incorrectly informed an unrepresented litigant that filing a Motion To Commence an Action Without Payment of Fees and Costs would suffice to commence action itself. The United States Court of Appeals for the Tenth Circuit equitably tolled the 90–day deadline for filing the complaint, limiting its holding "specially to the particular facts and circumstances" of the case. *Id.* at 986.

Were the stay order not lifted approximately six weeks before the expiration of the December 8, 1999 deadline, this case indeed would have been closer. However, plaintiff's inaction for seven months after the stay was lifted cannot be attributed to "misunderstanding caused by the court." In its October 13, 1999 order lifting plaintiff's stay, the Arizona district court specifically found "that the issues to be raised in the District of Columbia, pursuant to the Contract Disputes Act of 1978, are different and separate from those raised in the action before this Court." This statement should have served to alert diligent counsel that plaintiff's appeal rights should be secured before the expiration of the filing deadline under section 609(a)(3), six weeks hence. This failure to do so is sufficient to compel the finding that equitable tolling is not appropriate to the facts of this case.[3]

---

3. Because equitable tolling is not appropriate to the facts of this case, the court leaves aside the second prong of the *Bailey* inquiry—whether

Congress wanted the doctrine of equitable tolling to apply in suits against the United States.

**516**

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint for lack of jurisdiction.

**IT IS SO ORDERED.**

No costs.