**Beverly FRYMIRE, D/B/A Superior Cleaning Service, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 99–977C.

United States Court of Federal Claims.

Jan. 11, 2002.

Beverly Frymire, Bloomfield, Missouri, pro se.

Joseph Trautwein, Commercial Litigation Branch, Civil Division, United States Depart-

ment of Justice, Washington, D.C., for the defendant.

## ORDER

HORN, Judge.

### FINDINGS OF FACT

In 1985, Superior Cleaning Service bid on a contract to perform janitorial services in offices at the Keasler Building, Bloomfield, Missouri, for the Agricultural Stabilization and Conservation Service (ASCS), now the Farm Service Agency (FSA), of the United States Department of Agriculture (USDA). In 1985, plaintiff, Beverly Frymire, through Superior Cleaning Service, entered into a one-year contract to perform janitorial services for the ASCS. Neither party has retained a copy of the contract. Under the contract for 1985–1986, Ms. Frymire performed the janitorial work and ASCS paid Ms. Frymire $450.00 per month. After the contract expired in 1986, Ms. Frymire continued to perform the janitorial services for the next eleven years, and ASCS continued to pay her at the same rate of $450.00 per month until October 1997. In her complaint, which her attorney at the time titled "Petition for Damages," Ms. Frymire states that periodically during this eleven-year period she would ask Steve Morrison, the Stoddard County Executive Director of the FSA, if she could receive an increase in compensation through renegotiation or rebidding. Mr. Morrison's position, however, was that, whenever Ms. Frymire brought up the topic of increased compensation, he would reply that the contract would have to be rebid and Ms. Frymire would indicate that she did not want him to rebid the contract and would continue to perform the janitorial services, receiving $450.00 per month for her services.

Defendant provided a copy of a report submitted by Mr. Morrison, which included the following description of the relationship with Ms. Frymire:

All of these bills [from Ms. Frymire] with the exception of the one submitted in October of 1997, (which is the one that prompted us to advertize [sic] for janitorial services) were in the amount of $450.00. The October 1997 bill which was submitted with a letter (see attached)[1] stated that Ms. Frymire had been performing the services for 12 years under the same contract and effective October 1, 1997 her fees would increase to $750.00 a month and she needed to sign at least a two year contract. Because the bill was submitted dated October 14, 1997, we did honor the increase for that month because we were already into the month, Judi had a retirement scheduled for October, and someone had to clean the office anyway. When I spoke to Ms. Frymire about the fact that we could not just increase her contract with out [sic] advertizing [sic] for bid [sic] to the public, she told me that it had come to the point that she was not making anything with the contract at $450.00, so if she didn't get the bid she would just find something else to do (she mentioned work at a factory). This was the first time when an increase in the amount of money to be paid for janitorial services was mentioned that she said she wanted it to be rebid to the public. At any time prior to this, when Ms. Frymire asked if there was any way she could get an increase, I would explain to her that the only increase we could give would require that the contract be advertized [sic] in the paper and people would have the opportunity to bid for the contract against her, and she always said she didn't want to do that.... It is interesting that during the bid process, the lowest bidder was only $100.00 higher than the amount we had been paying Ms. Frymire. After we notified Ms. Frymire that her bid was not accepted, she once again became concerned about someone bidding below her bid and if I am not mistaken she did call to ask if she could lower her bid, but that would have defeated the competitive bid process and would not have been fair to the other bidders ....

On November 12, 1997, Ms. Frymire sent Mr. Morrison a letter which claimed that she had been "an employee of the U.S.D.A. I should have been entitled to the same benefits as a government employee—Pay scale,

---

1. Neither party provided the court with the letter.

Insurance Workman's compensation—Vacation time unemployment and any other benefits of a government employee." On March 9, 1998, Ms. Frymire submitted a claim to Mr. Morrison for $33,160.00. She derived this figure by totaling her perceived value of the labor she had contributed and the cost of cleaning supplies for ten years, less the amount that she had received for her cleaning services for eleven years. In a letter dated March 24, 1998, the Acting State Executive Director of the Missouri FSA denied Ms. Frymire's claim, stating that "you have never been a federal employee" and "[t]he janitorial services you provided through the years were performed under contract whereby you furnished the cleaning services and supplies and in return were paid a monthly fee." The Acting State Executive Director also wrote, "[y]ou were under no long term obligation that required you to continue providing the services" after the contract had expired in 1986.

In a letter dated March 30, 1998, Ms. Frymire addressed an appeal to "The Board of Contract Appeals" and apparently sent the letter to the General Services Administration Board of Contract Appeals (GSBCA). *See Superior Cleaning Service*, AGBCA No. 98–163–1, 1999 WL 49800 (Feb. 2, 1999). The appeal was forwarded to the Department of Agriculture Board of Contract Appeals, which docketed her case as AGBCA No. 98–163–1. *Id.* In her appeal to the Board, Ms. Frymire alleged that she was entitled to the salary and benefits of a federal employee for the past eleven years. *Id.*

The Department of Agriculture Board of Contract Appeals concluded that, "[f]or the Board to have jurisdiction, Appellant would have to show the existence of an implied-in-fact contract." *Id.* On December 14, 1998, in response to the government's motion to dismiss, Ms. Frymire requested that the Board voluntarily dismiss her appeal. *Id.* On February 2, 1999, the Board dismissed Ms. Frymire's appeal, without prejudice, stating that if neither party moved for reinstatement within sixty days, the dismissal would "become with prejudice." *Id.* There is no indication in the record that Ms. Frymire ever moved for reinstatement of her appeal.

On December 6, 1999, Ms. Frymire filed suit in this court. In her complaint, Ms. Frymire states that her claim "is based upon an implied-in-fact contract, or that this cause of action is based upon a violation of the procurement statutes and regulations of the United States government, in which the United States government must pay for the goods and services that it receives." The complaint was filed by plaintiff's counsel at the time, who also had represented plaintiff before the Department of Agriculture Board of Contract Appeals, but who subsequently withdrew from the case. Plaintiff was afforded time to obtain new counsel, but ultimately opted to proceed *pro se*. Defendant has filed a motion to dismiss in response to the complaint. To afford plaintiff additional opportunity to respond to the defendant's motion to dismiss, as a *pro se* plaintiff, Ms. Frymire was permitted to file a supplemental response on October 15, 2001 in addition to her original response.

## DISCUSSION

The defendant has filed a motion to dismiss for lack of subject matter jurisdiction. Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, even on appeal. *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed.Cir.1997); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of jurisdiction); *Schweiger Constr. Co. v. United States*, 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl.

399, 404 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001); *Bowen v. United States*, 49 Fed. Cl. at 675; *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Consolidated Edison Co. v. O'Leary*, 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consolidated Edison Co. v. Pena*, 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States*, 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined*, (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied*, 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.' "); *RCS Enters., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to Rule 8(a)(1) of the Rules of the Court of Federal Claims (RCFC) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd.*

*v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

■ When deciding on a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. United States*, 49 Fed.Cl. 96, 100 (2001); *Alaska v. United States*, 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993), *cert. denied sub nom., Cedars–Sinai Med. Ctr. v.*

*O'Leary,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."); *Vanalco v. United States,* 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

 In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 2279 n. 10, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g* and *reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "'it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g* and *reh'g en banc denied* (2001); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir. 2000); *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d

573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied, en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

This lawsuit is governed by the Contract Disputes Act (CDA) of 1978, which applies to any express or implied contract entered into by an executive agency for the procurement of property, services, construction, alteration, repair or maintenance of real property. 41 U.S.C. § 602 (1994). Defendant argues that the plaintiff elected to pursue her claim before the Department of Agriculture Board of Contract Appeals, and, having so elected, may not now pursue her claim in the Court of Federal Claims. Defendant also contends that the plaintiff not only has made a final and binding election with respect to a Board of Contract Appeals, but has come to the Court of Federal Claims too late, beyond the CDA's twelve-month statute of limitations within which contract claims must be brought before the court. Both issues will be considered below, as well as the plaintiff's assertion before the Department of Agriculture Board of Contract Appeals and intimated before this court that she was a government employee, and the plaintiff's contention in the complaint filed in this court that her claim is founded on an implied-in-fact contract.

### Election of Forum

■ A contractor makes a binding election to proceed before either the United States Court of Federal Claims or a Board of Contract Appeals, and may not seek relief on the same claim from both adjudicatory fora. *Bonneville Assocs., Ltd. P'ship v. Barram,* 165 F.3d 1360, 1362 (Fed.Cir.1999), *cert. denied,* 528 U.S. 809, 120 S.Ct. 40, 145 L.Ed.2d 37 (1999) (citing *Bonneville Assocs. v. United States,* 43 F.3d 649 (Fed.Cir.1994)). The CDA provides a plaintiff a choice of filing an appeal from a contracting officer's final decision with an agency Board of Contract Appeals, 41 U.S.C. § 606, or the contractor may bring the claim directly in the United States Court of Federal Claims. 41 U.S.C. § 609(a)(1). This election of remedies is irrevocable once a contractor selects a forum

in which to bring an appeal. *Evans v. Sec'y of Dept. of Health and Human Servs.,* 30 Fed.Cl. 709, 711 (1994) (citing *Santa Fe Eng'rs v. United States,* 230 Ct.Cl. 512, 515–16, 677 F.2d 876, 878–79 (1982)); *Mark Smith Constr. Co., Inc. v. United States,* 10 Cl.Ct. 540, 544 (1986).

Ms. Frymire originally addressed an appeal to "The Board of Contract Appeals" in her letter dated March 30, 1998. The Department of Agriculture Board of Contract Appeals dismissed Ms. Frymire's appeal initially without prejudice on February 2, 1999. With Ms. Frymire's failure to move to reinstate her appeal, the dismissal became one with prejudice. Ms. Frymire responds that she was instructed by the County Executive Director and the State Executive Director of the Farm Service Agency to file her appeal with the Board, and believes she was misled by those officials, as well as her attorney at the time, as to where to file her complaint. Defendant does not address the allegation that plaintiff was directed to file her complaint with the Board. The record does reflect, however, that the purported contracting officer's final decision, dated March 24, 1998, signed by the Acting State Executive Director, and cited by the Board, does not contain any notice of the fora to which Ms. Frymire could take an appeal of the contracting officer's final decision or the time limits for such action under the CDA. For that matter, it is not clear from the record if the Acting State Executive Director was a contracting officer, or an official with authority to ratify a contracting officer's decision. A contracting officer is defined by the CDA as "any person who, by appointment in accordance with applicable regulations, has the authority to enter into and administer contracts and make determinations and findings with respect thereto. The term also includes the authorized representative of the contracting officer, acting within the limits of his authority[.]" 41 U.S.C. § 601(3). The record does not reflect whether or not the official signing the March 24, 1998 letter to Ms. Frymire fits into the CDA definition.

Assuming, however, that the Acting State Executive Director's March 24, 1998 letter was the equivalent of a contracting officer's

final decision, the record does reflect that the standard notice to claimants to be provided in a contracting officer's final decision was not provided to Ms. Frymire. The CDA provides that the contracting officer's final decision "shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter." 41 U.S.C. § 605(a). For an example of contractor rights under the CDA, the notice in *Mark Smith Construction Company v. United States* stated:

> If you decide to make such an appeal [to the Board], you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within 90 days from the date you receive this decision. . . . Instead of appealing to the Board of Contract Appeals, you may bring an action directly to the U.S. Court of [Federal] Claims within 12 months of the date you receive this decision.

*Mark Smith Constr. Co., Inc. v. United States*, 10 Cl.Ct. at 545 (emphasis omitted). The court in *Mark Smith Construction Company* noted that:

> Once the fact of an election to appeal the contracting officer's adverse decisions to the Board has been established, our precedent mandates that the only remaining issue is whether that election was "informed, knowing and voluntary." *Prime Construction Co., Inc. [v. United States]*, 231 Ct.Cl. 782, 1982 WL 25226 (1982); *Tuttle/White Constructors, [Inc. v. United States]*, 228 Ct.Cl. 354, 656 F.2d [644 (1981) ]; *National Electric Coil v. United States*, 227 Ct.Cl. 595 [1981 WL 21402] (1981). If so, then the election is binding and we are without jurisdiction. If not, we would naturally proceed to the merits *de novo*, and disregard any action taken by the Board. . . .

> As a general rule, in all such cases, this court has looked first and foremost at whether the plaintiff was ever informed, or was erroneously informed, of his appeal rights pursuant to the CDA. *National Electric Coil*, 227 Ct.Cl. at 597; *Prime Construction*, 231 Ct.Cl. at 783; *Santa Fe Engineers, Inc. v. United States*, 230 Ct. Cl. 512, 677 F.2d 876 (1982); *Beacon Oil*

*Co. v. United States*, 8 Cl.Ct. 695, 698 (1985). Generally, these criteria have been held to be dispositive.

*Mark Smith Constr. Co., Inc. v. United States*, 10 Cl.Ct. at 544; *see also Bonneville Assocs. v. United States*, 43 F.3d 649, 655 (Fed.Cir.1994) (citing the *Mark Smith Construction Company* case for the requirement that the election of fora be "informed, knowing, and voluntary."). In *Mark Smith Construction*, the court found that the plaintiff had made an informed decision, based on the notice of rights quoted above. *Id.* at 545. In the present case, absent notice of rights, the issue remains unresolved and the record is inadequate to support defendant's motion to dismiss on the basis of election of forum. In appealing to the Department of Agriculture Board of Contract Appeals, plaintiff may have made a binding election of forum, but the record, as well as the briefing of this issue by the parties, is inadequate to demonstrate a binding election at this time.

### Statute of Limitations

The CDA provides that a contractor may file an action directly on a claim in the United States Court of Federal Claims, but that action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim. . . ." 41 U.S.C. § 609(a)(3) (1994). *See D.L. Braughler Co., Inc. v. West*, 127 F.3d 1476, 1480 n. 3 (Fed.Cir.1997); *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1572 n. 2 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1994); *Krueger v. United States*, 26 Cl.Ct. 841, 844 (1992). Defendant asserts in its motion to dismiss that Ms. Frymire is time-barred from bringing this suit because she failed to submit her complaint until December 6, 1999, more than twenty months after the agency's purported March 24, 1998 final decision.

Plaintiff responds that she was informed by her attorney at the time that she must file a complaint within six years, and that she filed a timely appeal to the Department of Agriculture Board of Contract Appeals within six days of receiving the agency's denial of her claim, on March 30, 1998. The general statute of limitations applicable to actions

filed in the Court of Federal Claims does provide for a six-year statute of limitations. 28 U.S.C. § 2501 (1994). However, in the instant case plaintiff must comply with the more stringent and specifically applicable twelve-month CDA statute of limitations described above. The issues discussed above, as to whether or not an authorized contracting officer issued a final decision to Ms. Frymire, as well as the implications of the failure of the March 24, 1998 agency letter to Ms. Frymire to provide statutory notice of rights under the CDA also cloud defendant's motion to dismiss. based on the CDA's twelve-month statute of limitations. If the Acting State Executive Director of the Missouri FSA, who purported to deny plaintiff's complaint, was not, in fact, a contracting officer, then the CDA's twelve-month statute of limitations did not commence. *See also Bonneville Assocs., Ltd. v. Barram,* 165 F.3d at 1365–66 (discussing equitable tolling of the time limitations in the CDA, versus excusable neglect); *see also Int'l Air Response v. United States,* 49 Fed.Cl. 509, 513–14 (2001). Plaintiff may have failed to file a timely complaint in this court, but the record, as well as the briefing of this issue by the parties, is inadequate to support defendant's motion to dismiss on this basis at this time.

*Government Employee Status*

Plaintiff primarily based her complaint filed in this court on an implied-in-fact contract. Plaintiff earlier had sought from the Department of Agriculture Board of Contract Appeals the salary and benefits of a government employee. *See In re Superior Cleaning Service,* AGBCA No. 98–163–1, 1999 WL 49800 (Feb. 2, 1999). Although the same government employee issue does not appear to be raised directly in the complaint filed by Ms. Frymire before this court, plaintiff's supplemental response to the defendant's motion to dismiss contains language which indicates plaintiff might still think she is seeking "monetary damages for wages."

█ The United States Court of Appeals for the Federal Circuit has stated that there is a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Hamlet v. United States* 63 F.3d 1097, 1101 (Fed.Cir.1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996) (citing *Chu v. United States,* 773 F.2d 1226, 1229 (Fed.Cir.1985)).

█ The Federal Circuit in *Hamlet* addressed the issue of jurisdiction in the Court of Federal Claims when a plaintiff claims a breach of contract in the context of federal civil service. *Hamlet v. United States,* 63 F.3d at 1100. The plaintiff in *Hamlet* claimed that the Court of Federal Claims had jurisdiction over her complaint because ASCS breached her employment contract when the agency removed her from her position. The court, citing *Army & Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 738, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982), stated that a court should examine the record and relevant agency regulations and decide whether a plaintiff was employed by appointment, rather than by contract, and if by appointment, the Court of Federal Claims would not have jurisdiction over the plaintiff's contract claim against the United States. *See Hamlet v. United States,* 63 F.3d at 1101. The court in *Hamlet* used the evidence offered by the plaintiff—an employee manual, her participation in the Civil Service Retirement System, and her enrollment in the federal health benefits program—as corroboration that the plaintiff held her position by appointment and not under contract. *Id.* at 1102.

*Hamlet* was concerned, as is the present case, with the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture. The ASCS office at issue in *Hamlet* was in Charlotte County, Virginia. *Id.* at 1100. The ASCS office at issue in the present case is in Bloomfield, Missouri. The applicable employee manual discussed in *Hamlet,* the "22–PM Manual," stated that "appointment" would be used for the employment of most ASCS workers, but that ASCS offices should "'obtain professional janitorial services through contract.'" *Id.* at 1102. The record in Ms. Frymire's case contains no indicia of employment of plaintiff by appointment; the

record instead reflects that the ASCS office in Bloomfield, Missouri obtained professional janitorial services by contract. There is no indication that plaintiff, for example, participated in the Civil Service Retirement System or was enrolled in the federal health benefits program, as was the plaintiff in *Hamlet. Id.* There is no indication in the record before the court that Ms. Frymire was paid pursuant to the government employee's "GS pay scale." *See Boston v. United States,* 43 Fed. Cl. 220, 226 (1999). The record currently under review reflects, instead, that Ms. Frymire's status derived originally from a contract, with a bid from Superior Cleaning Service, acceptance of the bid by the ASCS, acknowledgment by the plaintiff of the contract and receipt of $450.00 in payment per month pursuant to the contract terms. To the extent that it is reflected in the plaintiff's complaint, the court cannot find that plaintiff's claim was based on an appointment as a government employee.

*Implied–in–Fact Contract*

■ Plaintiff's complaint alleges that her claim is "based upon an implied in fact contract." The elements of an express contract, such as the original 1985–1986 contract between plaintiff and the government, are "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." *Total Medical Management, Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.Cir.), *cert. denied,* 522 U.S. 857, 118 S.Ct. 156, 139 L.Ed.2d 101 (1997). An implied-in-fact contract, such as is asserted in the present case, is one " 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.' " *Porter v. United States,* 204 Ct. Cl. 355, 365–66, 496 F.2d 583, 590 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975) (quoting *Baltimore & O.R. v. United States,* 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)); *see also Atlas Corp. v. United States,* 895 F.2d 745, 754 (Fed.Cir.), *cert. denied,* 498

U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). Proof of an implied-in-fact contract requires proof of the same elements, noted above, as for an express contract. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir. 1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991).

At the expiration of the one-year express contract between the parties, plaintiff continued to provide professional janitorial services, and defendant continued to pay plaintiff the originally agreed upon contract price of $450.00 per month. This conduct of the parties continued without benefit of an express, written contract for over a decade. The record reflects a classic implied-in-fact contract, as contended by the plaintiff, inferred from the conduct of the parties and reflecting the tacit understanding of the parties. The conduct of the parties also reflected their tacit understanding of the consideration to be paid by the government—$450.00 per month. In fact, plaintiff indicates resistance on the part of the government to paying greater consideration. Plaintiff indicates that she was unsuccessful in several attempts over the years in obtaining additional compensation through either renegotiating or rebidding. The record does not reflect a meeting of minds of plaintiff and the government for the government to pay more than $450.00 per month. *See Atlas Corp. v. United States,* 895 F.2d at 754 ("[T]he parties have admitted that the extensive tailings stabilization ... was not even contemplated by the parties at the time of the contracts. Therefore, there can have been no negotiation and 'meeting of the minds' that could create an implied-in-fact contract respecting the cost of the stabilization.").

■ Plaintiff asserts that her compensation was inadequate. However, a contract is a mutual endeavor, requiring a meeting of the minds of both parties on the elements of a contract, including consideration. Furthermore, it is a long-established rule that the court will inquire only into whether there has been bargained-for exchange, and not into the adequacy of consideration. *See Silverman v. United States,* 230 Ct.Cl. 701, 711, 679 F.2d 865, 871 (1982); *Mills v. United States,* 187 Ct.Cl. 696, 700–01, 410 F.2d 1255,

1258 (1969); *Florida Keys Aqueduct Auth. v. United States,* 7 Cl.Ct. 297, 299 (1985), *aff'd,* 790 F.2d 95 (Fed.Cir.1986) (table). The $450.00 per month plaintiff complains of may well have been modest in terms of the professional janitorial services performed by the plaintiff; however, there was no meeting of minds for greater compensation. The conduct of the parties over the years reflects that their tacit understanding was for $450.00 per month, and not for a greater sum. Generally, it is not the role of courts to reset the terms of either an express contract, or of an implied-in-fact contract, but to find the terms set by the parties. The record before the court reflects that the government did not agree to consideration flowing to the plaintiff in an amount greater than the $450.00 per month actually paid.

The court has concluded that at this time the record may not support defendant's election of remedy and statute of limitations arguments. A more complete record may well support these jurisdictional arguments, with either argument, alone, supporting a dismissal of plaintiff's complaint. Notwithstanding the court's current position on the election of remedy and statute of limitation issues, the plaintiff is unlikely to prevail. The record reflects that the plaintiff is not and has never been a government employee. As indicated above, the law requires certain elements to be present for an individual to be a government employee, and those elements are absent here. Perhaps that is why plaintiff's complaint does not explicitly claim government employee status. Plaintiff was a government contractor, not a government employee.

█ The complaint does claim the existence of an implied-in-fact contract, however, again, as indicated above, this theory of the case will not provide plaintiff with a remedy. Defendant did not breach, but adhered to, the terms of the implied-in-fact contract between the parties. An implied-in-fact contract has terms just like an express, written contract, and it is clear from the conduct of the parties that there was no agreement by the parties to pay more than the $450.00 per month plaintiff acknowledges receiving. Plaintiff may have desired greater compensa-

tion, but that unilateral wish on the part of the plaintiff was not agreed to by the defendant. Defendant did not agree to pay greater compensation than the $450.00 per month, either explicitly or tacitly. After a thorough review of the record and of the pertinent legal precedent, the court concludes that under the implied-in-fact contract, plaintiff does not raise a cognizable claim in her complaint. As a result, plaintiff's complaint should be dismissed.

### CONCLUSION

For the foregoing reasons, the court **DENIES** defendant's motion to dismiss but, nonetheless, **DISMISSES** the plaintiff's complaint, without prejudice. Because matters outside the pleadings were presented to the court by both parties, relied on by the court, and trial is deemed unnecessary under the circumstances, the case shall be treated as one resolved by summary judgment, under RCFCs 12(b) and 56. The Clerk's Office shall enter judgment consistent with this order. Each party shall bear its own costs.

**IT IS SO ORDERED.**